NICHOLAS FRYE, )
next friend L.F., next friend M.F., and )
ELIZABETH FRYE, )
next friend L.F., next friend M.F., )
)
      Plaintiffs, )
)
v. )    No.:   3:25-cv-78-TAV-DCP
)
SEVIERVILLE POLICE DEPARTMENT, )
*et al.*, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on the State of Tennessee and Tennessee Department of Children's Services ("DCS") (collectively "State Defendants") motion to dismiss [Doc. 9]. Plaintiffs have responded [Doc. 15] and State Defendants have replied [Doc. 17]. This matter is now ripe for the Court's review. *See* E.D. Tenn. L. R. 7.1(a). For the reasons explained below, the Court will **GRANT** the motion to dismiss [Doc. 9], and all claims against the State Defendants will be **DISMISSED**.

## I.    Background

Plaintiffs allege that they traveled from their home in Alabama to Tennessee in February 2025, to celebrate their child, M.F.'s, seventh birthday [Doc. 1 ¶ 13]. Plaintiffs rented a room at a resort in Sevier County [*Id.*]. At some point on February 25, 2025, Mrs. Frye slipped and fell on the concrete stairs at the resort [*Id.* ¶ 14]. Mr. Frye gathered the family into the car and traveled down the road to Wal-Mart to obtain "medication and other

items" [*Id.* ¶ 15]. Upon exiting the Wal-Mart parking lot, and proceeding to their next stop, plaintiffs' vehicle was stopped by Officer Laura Franklin of the Sevierville Police Department ("SPD"), allegedly without reasonable suspicion or probable cause [*Id.* ¶¶ 4, 16]. Officer Franklin accused the plaintiffs of being intoxicated and/or impaired, but plaintiffs explained the situation and denied any intoxication or impairment [*Id.* ¶ 17]. Officers Jason Rademacher and Camden Davis, both of the SPD, "assisted Officer Franklin with testing and decision making concerning the arrest and impairment" [*Id.* ¶¶ 5–6, 18]. Officer Franklin arrested the plaintiffs, charging them with several crimes, including driving under the influence ("DUI"), public intoxication, child abuse and negligent, and aggravated child abuse and neglect [*Id.* ¶ 19].

Plaintiffs believe that, after they were taken into custody, Officer Franklin, or another SPD officer, made a referral to DCS [*Id.* ¶¶ 20, 24]. The plaintiffs' children were taken to the SPD by unknown officers and were detained there until their grandmother arrived from Alabama [*Id.* ¶¶ 21, 24]. Plaintiffs also believe that someone from the SPD or DCS referred the arrests, detention, and criminal charges of the plaintiffs to the Alabama Department of Human Resources [*Id.* ¶¶ 22, 25]. As a result, plaintiffs were precluded from seeing their children, as custody was removed, and it took more than nine months for plaintiffs to regain custody of their minor children [*Id.* ¶¶ 25–26].

As relates to the State Defendants, plaintiffs raise claims under 42 U.S.C. § 1983, stating:

> The State of Tennessee is . . . liable for the actions of its official, the unknown DCS officer, who seized and removed the Frye children from the Frye parents and who, upon information and belief, sent forth a referral to its sister agency

2

in Alabama for further and/or permanent removal of said children. Continuing upon information and belief, the Tennessee official/agent's actions were based upon a custom as set forth in the preceding paragraph, thereby rendering the State of Tennessee liable.  <u>Because the constitutional injury complained of is protected under the first prong of the Fourteenth Amendment to the Untied States Constitution, the State of Tennessee is not immune subject to the Eleventh Amendment to the United States Constitution</u>

[*Id.* ¶ 46 (emphasis in original)].  Plaintiffs also allege that the State Defendants failed to adequately train their officials, which caused the constitutional injury in this case, and such failure to train is part of the policies and customs of the State Defendants [*Id.* ¶ 47].  Further, plaintiffs contend that the State Defendants ratified the unconstitutional actions of its lower level officials, and therefore, are liable for the constitutional injuries [*Id.* ¶¶ 48–49].

Plaintiffs also raise a claim under the Tennessee Governmental Tort Liability Act ("TGTLA"), although it is unclear whether plaintiffs raise such claims against the State Defendants, as no specific allegations regarding the State Defendants are contained within that section of the complaint [*Id.* ¶¶ 53–58].

## II.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2) which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

3

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## III.    Analysis

The State Defendants contend that all claims against them are barred by the Eleventh Amendment [Doc. 10]. It is well settled that States enjoy Eleventh Amendment immunity from suits in federal court unless the State has consented to suit or Congress has abrogated their Eleventh Amendment immunity." *Firestone Park Athletic Ass'n v. State of Ohio*, 217 F. Supp. 2d 833, 835–36 (N.D. Ohio 2002) (citing *Seminole Tribe v. Florida*, 517 U.S. 44,

4

54 (1996)). "This Eleventh Amendment immunity from suits in federal court against un-consenting States also applies to agencies and instrumentalities of the States." *Id.* at 836 (citing *Pennhurst v. Halderman*, 465 U.S. 89, 124 (1984)).

### A.    Section 1983 Claim

The State Defendants first argue that plaintiffs' § 1983 are barred by the Eleventh Amendment, because the State of Tennessee has not waived its Eleventh Amendment immunity from suit, nor has Congress abrogated Eleventh Amendment immunity for § 1983 claims [Doc. 10, pp. 5–6]. While the State Defendants agree that Congress can abrogate states' immunity to enforce the Fourteenth Amendment, Congress has not done so here [*Id.* at 6]. Further, to the extent that plaintiffs seek to rely on liability under *Monell v. Department of Social Services.*, 436 U.S. 658, 691 (1978), such applies only to local governments, not state governments [*Id.* at 6–7].

Plaintiffs respond that that they are not merely seeking damages from the state directly, but rather, assert that the state is liable for actions of officials based on the well-established custom or policy amounting to deliberate indifference to constitutional rights [Doc. 15, p. 4]. They indicate that such liability stems from *Monell* [*Id.* at 6]. Plaintiffs argue that, while *Monell* originally applied to municipalities, federal courts have recognized that § 1983 claims against state entities may proceed where plaintiffs seek prospective relief or where claims are asserted against individuals in their personal capacities who are acting pursuant to official policy [*Id.* (citing *Kentucky v. Graham*, 473 U.S. 159)]. Plaintiffs indicate that they can seek prospective relief against a state official to halt ongoing violations of federal law under *Ex Parte Young*, 209 U.S. 123 (1908) [*Id.* at 4].

"The Eleventh Amendment bars suits under § 1983 against states, their agencies, and their official sued in their official capacities for damages, unless the state has waived its sovereign immunity or consented to be sued in federal court." *Perez v. Wade*, 652 F. Supp. 2d 901, 904 (W.D. Tenn. 2009). Tennessee has not consented to suit or waived its sovereign immunity relating to § 1983 actions. *Id.* (citing *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)).

In the complaint, plaintiffs allege that "[b]ecause the constitutional injury complained of is protected under the first prong of the Fourteenth Amendment . . . the State of Tennessee is not immune subject to the Eleventh Amendment . . ." [Doc. 1 ¶ 46 (emphasis omitted)]. Plaintiffs do not seem to reiterate this argument in their response to the motion to dismiss [Doc. 15], and do not provide any citation in support of such argument in their complaint [*See* Doc. 1]. And while "Congress can abrogate a State's sovereign immunity to enforce the Fourteenth Amendment, it did not do so when it enacted § 1983." *Mikel v. Quin*, 58 F.4th 252, 256 (6th Cir. 2023). Accordingly, the Court does not find that the Fourteenth Amendment exempts plaintiffs' § 1983 claims from the sovereign immunity for the Eleventh Amendment.

Plaintiffs also contend that their § 1983 claims against the State Defendants are not barred in light of *Ex Parte Young* [Doc. 15, p. 4]. *Ex Parte Young*, 209 U.S. 123 (1908) established an exception to the Eleventh Amendment's sovereign immunity, permitting suits against state officials in their official capacities for prospective injunctive relief in order to ensure the enforcement of federal law. *Perez*, 652 F. Supp. 2d at 906. "'In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to

6

suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (quoting *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). This case clearly does not fall within the scope of the *Ex Parte Young* exception. The complaint seeks only the award of money damages, and does not seek any injunctive relief [Doc. 1, pp. 13–14]. Moreover, the facts of the complaint do not relate to any "ongoing" violation, but rather, relate to past events which have concluded [*See generally*, Doc. 1]. Accordingly, the *Ex Parte Young* exception to sovereign immunity does not apply to the instant case.

Finally, plaintiffs appear to bring their § 1983 claim against the State Defendants under *Monell*, alleging an illegal custom or policy, as well as failure to train and supervisory ratification [Doc. 1 ¶¶ 46–49]. Defendants deny that *Monell* liability applies to states, arguing that *Monell* only applies to municipalities [Doc. 10, pp. 6–7]. Plaintiffs, on the other hand, assert that *Monell* now applies to state entities when plaintiffs seek prospective relief or where claims are asserted against individuals in their personal capacities when acting pursuant to official policy [Doc. 15, p. 6].

But even if a state could be held liable under a *Monell*-type theory, that does not answer the question of whether the state maintains sovereign immunity under the Eleventh Amendment. Indeed, the Supreme Court, in *Monell*, stated that its holding was "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Monell*, 436 U.S. at 690 n.54; *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) ("States are protected by the Eleventh Amendment while

7

municipalities are not, and we consequently limited our holding in *Monell* 'to local government units which are not considered part of the State for Eleventh Amendment purposes'"). Plaintiffs cite no legal support for their bald assertion that *Monell*-type claims, asserted against a state, are not barred by the Eleventh Amendment. Absent a lack of any authority to the contrary, the Court finds that plaintiffs' § 1983 claims against the State Defendants are barred by the Eleventh Amendment.

As a final note on this subject, plaintiffs seem to contend that they are permitted to bring claims against a state official in their individual capacity for violation of § 1983 [Doc. 15, pp. 5–6]. But that question is not before the Court at this time. Rather, the Court's holding is limited to plaintiff's claims against the State of Tennessee and DCS.

### B. TGTLA Claim

The State Defendants also argue that they are entitled to Eleventh Amendment immunity from plaintiff's state law tort claim [Doc. 10, p. 7]. The State Defendants contend that Tennessee has not expressly waived its immunity to state tort claims brought in federal court, nor has Congress abrogated Tennessee's immunity to such claims [*Id.*]. Further, State Defendnats contend that it is irrelevant that plaintiffs brought this claim under the TGTLA, as that statute governs only claims against local government entities, and has never been applicable to the state or its agencies [*Id.* at 8].

Plaintiffs respond that they have asserted a valid cause or action under the TGTLA [Doc. 15, p. 7]. They argue that under Tennessee Code Annotated § 29-20-205, the TGTLA waives sovereign immunity for injuries proximately caused by the negligence of employees of a governmental entity, with limited exceptions not applicable to this case [*Id.*]. Plaintiffs

assert that Tennessee courts have recognized claims under the TGTLA against state and municipal entities in analogous situations, citing *Hughes v. Metropolitan Government of Nashville and Davidson County*, 340 S.W.3d 352, 370 (Tenn. 2011) [*Id.* at 8]. Plaintiffs also allege that under Tennessee Code Annotated § 29-20-310(b), the State is subject to suit for torts of its employees to the same extent as private individuals, when acting in their official capacities [*Id.*].

Plaintiffs seem to misapprehend the State Defendants' argument in this regard. The issue before the Court is not whether the type of claim that plaintiffs have brought falls within the scope of the TGTLA, but rather, whether the TGTLA's limited waiver of sovereign immunity applies to claims against the State and its agencies. The Tennessee Supreme Court has answered this question, concluding that "[t]he [T]GTLA governs only claims against counties, municipalities, and other local governmental entities and does not apply to claims against the State." *Sneed v. City of Red Bank*, 459 S.W.3d 17, 24 (Tenn. 2014). And the Tennessee Court of Appeals has also confirmed that the TGTLA "is not and never has been applicable to the State of Tennessee or its agencies and departments." *Lucas v. State*, 141 S.W.3d 121, 126 (Tenn. Ct. App. 2004). The Court acknowledges that, in *Hughes*, which plaintiffs cite, the Tennessee Supreme Court stated, in explaining the background of the TGTLA, that the statute "removed the exemption of state and local governments from tort liability in limited circumstances." 340 S.W.3d at 360. But *Hughes* made no further mention of the TGTLA's applicability to the state government, and, indeed, that case did not involve a claim against the State of Tennessee. *See* 340 S.W.3d at 352. Ultimately, in light of the Tennessee Supreme Court's unequivocal determination in *Sneed*,

9

decided after *Hughes*, that the TGTLA does not apply to the state, the Court concludes that plaintiffs' state law claims against the State Defendants are barred by the Eleventh Amendment, and do not fall within the waiver of immunity in the TGTLA.

## VI.     CONCLUSION

For the reasons above, the State Defendants' motion to dismiss [Doc. 9] is **GRANTED.**  All claims against the State Defendants are **DISMISSED.**  In light of this order, the stay in this case is hereby **LIFTED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE